UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERSCHEL C. KING, JR.,

Plaintiff,

v. CASE NO. 3:14-cv-460-J-34JBT

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

Defendant.
________________________________/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a Period of Disability and Disability Insurance Benefits. A hearing was held before the assigned Administrative Law Judge ("ALJ") on October 16, 2013, at which Plaintiff was represented by an attorney. (Tr. 489–524.) In a decision dated February 12, 2014, the ALJ found that Plaintiff had not been under a disability at any time from December 1, 2006, the alleged onset date, through December 31, 2010, the date last insured. (Tr. 455–66.)

In reaching his decision, the ALJ found that Plaintiff had the severe

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

impairments of "status post laminectomy, degenerative disc disease, [and] chronic back pain." (Tr. 457.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with a number of additional restrictions. (Tr. 458.) At step four of the sequential evaluation process, the ALJ found that Plaintiff was capable of performing his past relevant work as a county commissioner, as he had actually performed it.[2] (Tr. 464–65.)

Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*" *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th

[2] This Court had previously reversed and remanded this case because the ALJ had erroneously relied on the position of "county manager" to determine the requirements of Plaintiff's past relevant work. (Tr. 525–38.)

Cir. 2002).

## II. Discussion

Plaintiff raises four issues on appeal, which he frames as follows:

> I. The Administrative Law Judge ("ALJ") failed to apply the correct legal standards at step four of the sequential evaluation process when he found that Mr. King was capable of returning to his past work as a County Commissioner.
>
> II. The ALJ failed to apply the correct legal standards to the opinion of Mr. King's treating physician, Dr. Goodwin.
>
> III. The ALJ failed to apply the correct legal standards to Mr. King's testimony.
>
> IV. Reversal for an award of benefits is the appropriate remedy.

(Doc. 14 at 1–2.) The undersigned will discuss each issue in turn.

### A. The ALJ did not err at step four.

Although the first issue is stated broadly, Plaintiff primarily, if not exclusively, challenges the ALJ's rejection of certain post-hearing evidence. Without citing any specific authority, Plaintiff argues that the "ALJ should have scheduled a supplemental hearing in Mr. King's case to address this post-hearing evidence." (Doc. 14 at 16.) As part of this argument, Plaintiff claims that the ALJ did not satisfy his duty to fully and fairly develop the record. He argues further that the ALJ should have asked more questions about Plaintiff's past relevant work at the hearing, even though Plaintiff had an attorney present. He also argues that the ALJ believed that the proceedings were adversarial in nature rather than inquisitorial, and he points

out that the ALJ used the term "cross-examination" in reference to Plaintiff's testimony. The undersigned recommends that these arguments be rejected.

In describing and addressing the post-hearing evidence at issue, the ALJ stated:

> Post hearing exhibits 24E to 26E were added. These exhibits essentially contain the claimant's statements concerning his work in a letter prepared after the hearing and an analysis based on this by a vocational expert. The undersigned is relying on the claimant's statements under oath concerning how he did the job. A letter after the hearing prepared to essentially rebut or change his testimony under oath is not considered reliable and will be given no weight. This case was heard after a remand and there is no reason the claimant would not be prepared to fully answer all questions about his work under oath and there is no reason to allow the claimant to change his testimony by a later statement not under oath and not subject to cross examination.

(Tr. 465.)

Plaintiff argues that the above "findings are not based on the correct legal standards and are not supported by substantial evidence. The truth is Mr. King did not 'change' or 'rebut' his testimony at the hearing. He provided additional important relevant information that was not elicited at the hearing." (Doc. 14 at 14.)

Although an ALJ has a duty to fully and fairly develop the record, it was not a special duty in this case because Plaintiff was represented by an attorney at the hearing. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic

obligation to develop a full and fair record. . . . [T]he ALJ's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." (quotations omitted)). *See also Burgin v. Comm'r of Soc. Sec.*, Case No. 6:09-cv-1233-Orl-DAB, 2010 WL 2510650, at *9 (M.D. Fla. June 21, 2010) *aff'd*, 420 F. App'x 901 (11th Cir. 2011) ("[T]he heightened duty to develop the record . . . from *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981), applies when claimants are not represented; . . .").

Nevertheless, special duty or not, there is no indication from the hearing transcript that the ALJ failed to fulfill this duty. At the outset of the hearing, the ALJ stated: "We do need to focus on the work history as the primary reason for the remand was whether or not the accurate task out was used at Step Four, and you can go ahead then with questions for the claimant." (Tr. 492.) Plaintiff's attorney then proceeded to ask Plaintiff about his past relevant work, including his duties as a county commissioner. (Tr. 494–99.) For example, the attorney asked: "What we want to know is what your duties were?" (Tr. 494.) The ALJ directed: "Just tell us what you did." (Tr. 494.) Plaintiff was also asked detailed follow-up questions about his duties as a county commissioner, such as how long the meetings lasted. (Tr. 495.)

The ALJ also asked Plaintiff questions about his county commissioner duties. (Tr. 508–11.) Plaintiff agreed that one of his primary duties was handling constituent complaints. (Tr. 509.) He stated: "I did get calls like that and I did refer

it to the county administrator." (Tr. 509.) Towards the end of the hearing, Plaintiff's attorney asked Plaintiff if there was anything he wanted him to add. (Tr. 519.) In short, the hearing transcript shows that Plaintiff had every opportunity to describe in full his duties as a county commissioner.

Neither the post-hearing letter from Plaintiff nor the one from Plaintiff's attorney indicates that Plaintiff did not have an adequate opportunity at the hearing to describe his duties. (Tr. 734–35, 744–46.) Rather, Plaintiff claimed: "After the administrative hearing, I was contacted by a vocational expert who asked me about what I actually did when I served as a County Commissioner. I realized there were a lot of things I did that were not part of the statutory requirements of the job or part of any election campaign." (Tr. 746.) In this letter, Plaintiff went on to list a number of "activities that were part of the job that were not mentioned at the hearing," including, for example, meeting with his constituents almost every morning "at 8:01 a.m. for up to three or four hours," driving to construction sites and other locations, preparing a newsletter, standing outside four to five hours at a time distributing the newsletter, attending numerous meetings and ceremonies, and returning phone calls to constituents. (Tr. 746.)

The undersigned recommends that substantial evidence supports the ALJ's view that this post-hearing letter was unreliable because it was not under oath and was inconsistent with Plaintiff's hearing testimony. The undersigned also recommends that the ALJ was not compelled to reopen the hearing because of

this letter, particularly when he was not specifically requested to do so.[3] *See* 20 C.F.R. § 404.944 ("The administrative law judge *may* also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence." (emphasis added)); *see also McClesky v. Astrue*, 606 F.3d 351, 355 (7th Cir. 2010) ("The decision whether to reopen the hearing to receive 'new and material evidence' is indeed discretionary . . . ."). Furthermore, the undersigned recommends that the ALJ met his duty to fully and fairly develop the record, and did not evidence a fundamental misunderstanding of the nature of the proceedings. Plaintiff cites no authority for the proposition that cross-examining a witness is inconsistent with an inquisitorial, rather than an adversarial, proceeding. To the contrary, cross-examination has long been recognized as a useful tool to determine the truth. *See, e.g.*, *California v. Green*, 399 U.S. 149, 158 (1970) (stating that cross-examination is the "greatest legal engine ever invented for the discovery of truth"). In short, the undersigned recommends that the ALJ applied the correct legal standards at step four of the sequential evaluation process.

**B. The ALJ did not err regarding Dr. Goodwin's opinions.**

The second issue presented is whether the ALJ failed to apply the correct legal standards in considering the opinions of Dr. Phillip Goodwin, Plaintiff's treating internist. Good cause to discount a treating doctor's opinion exists when

---

[3] Although Plaintiff's attorney requested "a re-opening and an amended decision due to clerical error," it appears he was referring to a re-opening of the decision, not the hearing. (Tr. 735.)

"(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). The undersigned recommends that the ALJ articulated good cause supported by substantial evidence to give Dr. Goodwin's opinions little to no weight.  (Tr. 23, 463.)

First, as pointed out by Plaintiff, Dr. Goodwin completed two assessments, one dated July 14, 2008, and one dated October 5, 2009.  (Tr. 415–16, 747.)  The ALJ failed to address the earlier assessment in the decision currently being appealed.  However, the ALJ did address this assessment in his prior decision, and gave it "little weight."  (Tr. 23.)  As one of the reasons for discounting this assessment, the ALJ noted that Dr. Goodwin's opinion that Plaintiff could not stand at all was inconsistent with Plaintiff's own hearing testimony, and with Dr. Goodwin's failure to prescribe a device to assist with ambulation.  (Tr. 23.)  Since the ALJ had already addressed this assessment, the undersigned recommends that his failure to do so in the current decision is at most harmless error.  There is no reason for a remand because it is clear that the ALJ would still give this opinion little weight.  *See Stanton v. Astrue*, 617 F. Supp. 2d 1205, 1222 (M.D. Fla. 2008) (citing *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) for the proposition that "a remand is not essential if it will amount to no more than an empty exercise"); *see also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error harmless where it would not affect the outcome of the case).

Regarding the October 5, 2009 assessment, the ALJ reasonably characterized it as a "checklist form," and after recounting the restrictions contained therein, including that Plaintiff would have to recline or lie down for six hours in an eight hour work day, stated:

> The undersigned give [sic] no weight to this assessment provided by Dr. Goodwin. Dr. Goodwin did not provide any acute type care, but rather conservative management of the claimant's chronic back pain, which he characterized as stable. (Exhibit 25F). Progress notes do not document any significant findings on examinations during these every three-month office visits for medication refills.

(Tr. 463.)

The undersigned recommends that the above statements provide the requisite good cause, supported by substantial evidence, to discount Dr. Goodwin's opinions. The ALJ is correct that Dr. Goodwin, an internist, saw Plaintiff approximately every three months to manage his chronic back pain primarily with medication refills. (*See, e.g.*, Tr. 331–40, 357–69, 756–809, 818–36.) As recounted in the ALJ's decision, Plaintiff received an abundance of treatment from specialists for his back. (Tr. 459–63.) Also, since Dr. Goodwin did describe Plaintiff's chronic back pain as "stable," it was fair for the ALJ to point that out. (Tr. 434.)

Also, it was reasonable for the ALJ to conclude that the totality of Dr. Goodwin's progress notes did not document "significant" findings. For example, some of the notes document muscle spasm (Tr. 422), and some do not (Tr. 421).

The numerous references in the notes to pain could reasonably be viewed by the ALJ as reflective of subjective complaints rather than physical findings. Given the number of visits, and the absence of many physical examination findings regarding Plaintiff's back, the undersigned recommends that it was reasonable for the ALJ to conclude that there was an absence of significant physical examination findings in Dr. Goodwin's notes, particularly in relation to the severe restrictions contained in his assessment.

Moreover, the undersigned recommends that the ALJ's reasons for discounting the assessment of Dr. Goodwin cannot be read in isolation from the remainder of the decision. For example, soon after addressing Dr. Goodwin's opinions, the ALJ summarized his reasons for arriving at Plaintiff's RFC:

> The claimant has had rather conservative treatment entailing only medication management. He only participated in physical therapy for only one month. He refused to have a pain pump and follow the recommendations of Dr. Hoffmann. The claimant has had only mild findings on radiological studies. The claimant declined Lyrica, which supports that his problems were manageable with treatment he was already receiving. The claimant also sought re-election which shows that he thought he could continue his job as a commissioner. Ultimately, the claimant's complaints are not as severe as alleged. In sum, the undersigned finds that the claimant's abilities were well within the above residual functional capacity.

(Tr. 464.) These reasons collectively also provide substantial evidence for discounting Dr. Goodwin's opinions to the extent they were inconsistent with the RFC. In short, the undersigned recommends that the ALJ applied the correct legal

standards in addressing the opinions of Dr. Goodwin.

**C. The third and fourth issues have no merit.**

Although the third issue on appeal is framed in terms of the ALJ failing to apply the correct legal standards to Plaintiff's testimony, the argument made is that the ALJ did not properly assess Plaintiff's credibility because he did not properly assess Dr. Goodwin's opinions. As the undersigned recommends that the argument as to Dr. Goodwin be rejected, the undersigned recommends that this argument be rejected as well.

Finally, Plaintiff argues that reversal for an award of benefits, rather than for further proceedings, is warranted. As the undersigned recommends that no reversal of any type is warranted, it is recommended that this argument be rejected as well.

**III. Conclusion**

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the ALJ's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED.**

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on February 26, 2015.

Joel B. Toomey

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record